600 P.2d 32

Stanley R. BUTTERWORTH, Appellant,

v.

James WILEY, Arizona State Personnel Board, a division of the Arizona State Department of Administration, John Huerta, of the Arizona Department of Economic Security, Appellees.

No. 1 CA–CIV 3926.

Court of Appeals of Arizona,
Division 1,
Department A.

April 10, 1979.

Rehearing Denied Aug. 17, 1979.

Review Denied Sept. 18, 1979.

Machmer, Schlosser & Meitz by Robert H. Schlosser, Phoenix, for appellant.

John A. LaSota, Jr., Atty. Gen. by Peter C. Gulatto, Asst. Atty. Gen., Phoenix, for appellees.

## OPINION

HAIRE, Judge.

In September of 1972 the appellant, Stanley R. Butterworth, held the position of Chief of Data Processing for the Arizona State Department of Public Welfare. In accordance with the classification scheme of the State Personnel Commission [1] appellant was classified as an electronic data processing (EDP) Systems Analyst II. Appellant had reached (for salary and seniority purposes) a salary grade of 20, step 3, in that position.

At about this time the classification system for computer-oriented jobs in state service was under review by a task force of the Personnel Commission. The Commission was apparently of the opinion that the existing classification system no longer accurately described the available jobs within state service. As part of its evaluation of appellant's position, the task force contacted the appellant, his supervisor, and other employees of the Department of Public Welfare, and also conducted an audit of appellant's position.

The classification of EDP Systems Analyst II had been intended to describe a position that supervised an EDP Systems Analyst I and that was responsible for the review and study of systems for implementing and "interphasing" computer programs so as to improve the work process of any computer output function. The task force found that appellant supervised only keypunch operators and did not supervise any person classified as an EDP Systems Analyst I. It also concluded that appellant's job did not entail the review and evaluation of data processing needs, but only the supervision of the operational production of a computer shop. Accordingly, the task force determined that appellant's position was improperly classified, and that it should be classified as an EDP Computer Operations Supervisor I which was a lower salary grade.

The Personnel Commission thereafter notified appellant that effective October 1, 1972, his position was to be classified as an EDP Computer Operations Supervisor I at the lower salary grade, although his working title of Chief of Data Processing and the duties and responsibilities of his position had not been changed.[2] By letter dated

1. The State Personnel Commission originally had the authority to develop and administer state service personnel programs. *See* 1968 Ariz.Sess.Laws Ch. 200, § 1. The Commission was replaced by the present system of a Personnel Board and a Personnel Division of the Department of Administration on July 1, 1973. *See* 1972 Ariz.Sess.Laws Ch. 141, § 4.

2. Appellant did not incur a salary reduction as a result of this action. Instead, his salary was "red-lined" (frozen) until July 1, 1974, at which time the salary entitlement of his new salary

October 18, 1972, and addressed to the Personnel Commission Director, appellant protested his new classification and requested reinstatement as an EDP Systems Analyst II at the higher salary grade. The Director responded by letter of January 17, 1973, indicating therein that the action had been reviewed and concluding that, in his opinion, appellant's position had been properly reclassified as that of an EDP Computer Operations Supervisor I.[3]

Appellant took no further action until September 16, 1974, when through counsel he filed with the Personnel Division of the Department of Administration a request for review of the October 1, 1972 action. The request for review was denied on September 20, 1974, and on September 26, 1974 appellant filed this action in superior court. In superior court appellant sought relief in the form of a declaration that the alleged reclassification of October 1, 1972 was a nullity, with accompanying damages for loss of additional salary and promotions incurred as a result of the reclassification. Alternatively, appellant sought to compel a hearing pertaining to the reclassification. Following a non-jury trial, formal judgment was entered on April 8, 1977. That judgment sustained the action of the appellees "in all respects", based upon the trial court's findings that (1) the action with respect to the appellant had been a "reclassification" and not a demotion entitling appellant to a hearing; (2) that appellees' action had not been arbitrary, capricious, or

unreasonable; and (3) that the statute of limitations for an appeal from the reclassification had expired 35 days after the effective date of the reclassification. Appellant brings this appeal from the judgment and the subsequent denial of a motion for a new trial.

On appeal the appellant asserts that he was "demoted" and not "reclassified"; that even if it were only a "reclassification" due process would require a hearing, and that his action is not precluded by the statute of limitations. Jurisdiction in this Court to review the dismissal of a state employee is provided by A.R.S. § 41–785 F; general jurisdiction to review administrative decisions is provided by A.R.S. § 12–913. For reasons hereinafter set forth, we affirm the judgment of the superior court.

Whenever a court is asked to review the actions of an administrative agency, it must be mindful of the source and extent of its power to conduct such a review. This is particularly true here, for this case appears to fall on the borderline between two distinct review mechanisms.

■ Arizona's Administrative Review Act, A.R.S. § 12–901 et seq., is a general statute authorizing the review of "a final decision of an administrative agency except . . . where . . . a separate act provides for judicial review of the agency decisions and prescribes a definite procedure for the review." A.R.S. § 12–902 A.[4]

---

grade had overtaken the October 1, 1972 entitlement of his former grade.

3. With the omission of the discussions of the merits of the reclassification, this exchange of letters reads as follows:

"Dear Mr. Bennett:

"I respectfully request your early and personal review of the classification action taken by the Department of Public Welfare which demoted me to Grade 18 (from Grade 20) effective October 1, 1972. This action was dictated by a Personnel Commission decision 'on the basis that this position is not involved in EDP Systems Analysis. . . .'

"I ask for reinstatement as an EDP Systems Analyst II, Grade 20, Step 3, effective October 1, 1972, and offer the following information in support of this request:

* * *"

"Dear Mr. Butterworth:

This is in response to your letter of October 18, 1972, in which you request a review of the reclassification of your position from EDP Systems Analyst II to EDP Computer Operations Supervisor I. I will respond to the points you have itemized in your letter.

* * * * * *

"In light of this review of your position, I feel that your position has been correctly classified as EDP Computer Operations Supervisor I.

"I regret the delay in the processing of this request for appeal."

4. For a discussion of the relationship between the Administrative Review Act and various special review statutes, see Note, *Judicial Review of Administrative Action in Arizona*, 1975 Ariz.St.L.J. 739.

One special act providing a separate procedure for judicial review is A.R.S. § 41–785, which is applicable in situations involving certain permanent state employees who have been "dismissed, suspended or demoted." Thus, the applicability of one or the other of these statutes will depend upon an initial determination of whether or not appellant was actually "demoted" in October of 1972.

A.R.S. § 41–785 does not define the term "demotion". Instead, A.R.S. § 41–782(1) authorizes the personnel board to "[p]romulgate rules and regulations relating to personnel matters." Pursuant to this authority the personnel board has issued certain rules affecting the issues in this appeal.[5] Arizona Compilation of Rules and Regulations (A.C.R.R.) R2–5–01(15) defines "demotion" as "a change in the assignment of an employee from a position in one class to a position in another class having a lower salary grade." Subsection 10 of the same rule further defines "class" as:

> "[A] group of positions sufficiently similar as to duties performed, scope of discretion and responsibility, minimum requirements of training, experience, or skill, and such other characteristics that the same title, the same test of fitness, and the same schedule of compensation have been or may be applied to each position in the group and for which a class specification has been approved."

On the basis of these definitions, this Court is compelled to conclude that the appellant was "demoted" in October of 1972. We interpret "assignment" as referring to the employee's position within the personnel division's grade-and-step classification system, and not as a description of his job duties. See the text of R2–5–01(15), quoted above. Nothing in the definitions would require the agency's alteration of an assignment to be grounded on disciplinary reasons, or on a conclusion that the employee is inadequately performing in his assigned position, before any action taken against him can be treated as a demotion. Instead, under these definitions the agency "demotes" an employee, and thereby triggers the application of A.R.S. § 41–785, whenever it changes an employee's job assignment to "a position in another class having a lower salary grade." Moreover, although it is not entirely clear, the appellees have apparently precluded any argument that appellant's new job assignment was not actually a change from one "class" to another; for they have relied in this litigation upon A.C.R.R. R2–5–41(3) as authorizing their action. That very rule speaks of changes in "the *classification* of an existing position. . . ."[6] (emphasis added).

Appellees have devoted a considerable portion of their brief to the argument that a reallocation of computer-oriented positions is within the clear contemplation of A.C.R.R. R2–5–41, and because the appellant failed to seek judicial review within 35 days his action is now barred by A.R.S. § 12–904. Implicit in this argument is the assumption that the acts of reallocation were "administrative decisions" within the meaning of A.R.S. § 12–901(2). We are inclined to agree that the decision to reallocate per se would have been an administra-

---

**5.** At this juncture it is appropriate to indicate certain methodological devices that have been employed by this Court. Although we refer in the text to the rules of the personnel board, we are aware that the personnel board did not exist in October of 1972. *See note 1, supra.* No issue has been raised in this appeal, however, that would call into question the original promulgation of these rules by the State Personnel Commission; and we have adopted the current text and citation form of the relevant rules only after having compared them to the versions quoted by the parties at various places in the briefs and record finding no material changes. This Court has conducted a similar comparison of the earlier versions of relevant statutes. For the statutory predecessors of A.R.S. §§ 41–782, 783 and 785, *see*, respectively, 1968 Ariz.Sess.Laws Ch. 200, §§ 38–903, 904, and 910.

**6.** A.C.R.R. R2–5–41(3) provides in part as follows:

> "Reallocation of Existing Positions: The Assistant Director shall change the classification of an existing position when a material and permanent change in the duties and responsibilities of the position occurs."

tive decision that when finalized would have been reviewable under the Administrative Review Act. We also suspect that it might have been possible for the agency to have defined "demotion" in such a manner that it would not have included employees whose job classifications were altered as a result of a general position reallocation. The agency has not done this, however, but instead has defined "demotion" so broadly that it must necessarily include the action taken with respect to the appellant. In other words, although the decision within the agency itself to reallocate the position may have been reviewable only under the Administrative Review Act, the action taken pursuant to that decision and affecting appellant's job was nevertheless a demotion within the meaning of A.R.S. § 41–785.

■ Although we conclude that appellant was demoted in October of 1972, it does not follow that appellant is now entitled to the relief he seeks. This Court is impressed by the fact that appellant took no further steps to obtain review of the agency's action for 18 months after receipt of the Personnel Director's letter of January 17, 1973. The most that can be said for appellant's position in October of 1972 is that he had two potential avenues for obtaining judicial review, both of which contained rather short time limitations. Each of these limitations has been greatly exceeded by appellant's delay.

If appellant's letter of October 18, 1972 to the Personnel Commission Director is treated as an attempt to obtain relief under the Administrative Review Act, then the January 17, 1973 response to that letter, which specifically refused further reconsideration of appellant's reclassification, must be re-

garded as the service of a final administrative decision. *See* A.R.S. §§ 12–901(2) and 12–904. Accordingly, under A.R.S. § 12–904 the time for seeking superior court review of this decision expired 35 days later. *See also* A.R.S. § 12–902 B.

■ Alternatively, the letter of October 18, 1972 might be regarded as an attempt to secure relief under A.R.S. § 41–785. That statute contemplates a prompt hearing before the agency followed by a 30 day period for seeking further review in the superior court.[7] Initially, it should be noted that the letter was addressed to the Personnel Commission Director requesting his "early and *personal* review of the classification action. . . ." (Emphasis added). Nothing else in the letter would suggest to the Director that it was intended to be an attempt to exercise the appellant's right to a hearing before the full Commission, and this may explain why no hearing was ever held. Yet even if the letter can be construed as an attempt to exercise the right to a hearing, the January 17, 1973 response to the letter made it clear to the appellant that the Commission was satisfied that the reclassification had been proper and that no further action would be taken. If appellant, upon receipt of the response, had made the objection that the agency had misconstrued its own rules and statutes and that a hearing was mandatory, he could have obtained review of this final administrative decision (that a § 41–785 hearing is not necessary) under the Administrative Review Act. Inasmuch as he failed to do so, the claim is now barred.

■ We next consider appellant's assertions that he was denied due process. For

---

7. Former A.R.S. § 38–910, the predecessor of A.R.S. § 41–785, provides in pertinent part as follows:

"A. Any employee who is dismissed, suspended or demoted, after completing his probationary period of service as provided by the rules of the commission, shall have the right to appeal to the commission not later than thirty days after the effective date of such action. The employee shall be furnished with specified charges in writing when the action is taken. Such appeal shall be in writing and shall be

heard by the commission within thirty days after its receipt. The commission shall furnish the employing agency with a copy of the appeal in advance of the hearing.

\* \* \* \* \* \*

"D. Within thirty days after the recording of [the Commission's post-hearing determination] . . . the employee may appeal to the superior court of the county of residence on one or more of the following grounds . . .."

*See* 1968 Ariz.Sess.Laws Ch. 200.

**424**

purposes of this discussion, we can assume that appellant had an interest in his former position that was protected by the due process clause. *See, e. g., Jacobs v. Kunes,* 541 F.2d 222 (9th Cir. 1976), *cert. denied* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1977); *Roberts v. City of Tucson,* 122 Ariz. 91, 593 P.2d 645 (1979); *City of Flagstaff v. Superior Court,* 116 Ariz. 382, 569 P.2d 812 (1977). There is, nevertheless, a simple answer to appellant's contentions that he could not constitutionally be deprived of this interest without a right to a hearing: he was afforded a right to a hearing by A.R.S. § 41–785. This statute creates an elaborate mechanism for a full hearing before the personnel board, followed by judicial review, for an employee who is dismissed, suspended, or demoted. While it is true that there are relatively short time limitations in the statute that an employee must observe in order to preserve his rights to a hearing, no contention is made in this appeal that the time limitations are so unreasonable that they are constitutionally inadequate.

This is not a case in which any allegations have been made that the actions affecting the appellant's position were undertaken in bad faith or for constitutionally impermissible reasons. Rather, appellant's job was changed to a less desirable one as part of a larger agency action undertaken because it was felt that the existing classification system was inadequate. We do not believe that any serious contention can be made that the State cannot, or has not, reserved the right to change job classifications; nor are we authorized or willing to attempt to second-guess the agency as to the appropriateness of any particular reclassification. Instead, when an employee asserts that the action affecting him was improper. This Court is concerned first with whether the agency has followed valid procedures in regard to this employee's situation, and second, with whether these procedures are adequate to protect the interests at stake.

This particular employee had available to him in October of 1972 the procedures set forth in § 41–785, which included judicial review. The reasons why this employee was not afforded the hearing contemplated by A.R.S. § 41–785 are not entirely clear; it may have been because he did not properly request such a hearing, and it may also have been because the agency was operating under the mistaken assumption that a hearing was not required. Had this employee acted promptly to obtain further review upon receipt of the Personnel Director's response of January 17, 1973, this Court might have been willing to consider whether strict compliance with the relevant time limitations should be excused under these circumstances. But inasmuch as appellant took no further action for 18 months, even though reviews of demotions must be brought within 30 days and reviews under the Administrative Review Act within 35 days, we feel we may appropriately decline to consider these issues further.

The judgment of the trial court is affirmed.

DONOFRIO, J., concur.

FROEB, Judge, specially concurring:

I concur in the result but I would hold that the job action taken was a reclassification instead of a demotion.